## HENNIG v. EVANS.
### Patent Appeal No. 3127.

Court of Customs and Patent Appeals.
May 1, 1933.

Kwis, Hudson & Kent, of Cleveland, Ohio (B. M. Kent, of Cleveland, Ohio, and Watts T. Estabrook, of Washington, D. C., of counsel), for appellant.

Pennie, Davis, Marvin & Edmonds, of New York City (Leslie B. Young, of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

In this interference proceeding an appeal has been taken to this court from a decision of the Board of Appeals of the United States Patent Office reversing the decision of the Examiner of Interferences and awarding priority of invention to the party Evans.

The invention relates to a certain method of treating iron in foundry cupolas in the process of melting and refining same. Only one count is involved. It reads: "The improvement in the operation of foundry cupolas which comprises melting iron therein for [by] the combustion of coke, supplying to the foundry charge sodium carbonate in amount sufficient to form and maintain a thinly fluid alkaline slag, and maintaining a substantial body of such slag in contact with molten metal in the hearth of the cupola during the cupola operation."

The count is claim 4 of a patent to Evans granted June 29, 1926, upon an application filed May 9, 1925, the claim being copied by Hennig into his application, serial No. 725,-693, filed July 12, 1924, for patent on "Improvement in Method of Desulphurizing and Purifying Iron," which application was copending with that of Evans.

Hennig is the senior party, and, having taken no proofs, must rely upon his filing date for conception and reduction to practice. Evans took testimony, and presented certain documentary evidence in the effort to show conception and reduction to practice at least as early as October-November, 1923, and the issue before us is narrowed to the question of whether he did, in fact, reduce to practice at that time.

It is noted that the count makes no statement of any *ultimate* purpose or function of the process. The respective ultimate objects to be obtained are stated only in the specification of the respective applications.

Hennig gives the following:

"One of the objects of the invention is to provide a comparatively cheap, reliable and efficient method of desulphurizing and purifying iron that will overcome the objectionable features of methods heretofore used and produce better castings.

"A further object of the invention is to provide an improved method of desulphurizing in a cupola, that will involve the formation of a slag of high fluidity through which the molten pellets of iron will readily pass and thereby avoid objectionable oxidation and liability to re-sulphurization.

"A further object of the invention is to provide an improved method of desulphurizing iron, in a cupola, that will largely avoid the rapid destruction of the cupola lining, that is inherent in methods heretofore used, and leave the cupola comparatively free from

slag accumulations so that the work of preparing the cupola for the succeeding melt will be reduced to a minimum."

Evans states his objects as follows: "The present invention provides an improved process in which objectionable bridgings is avoided, in which a thinly fluid slag is insured, in which the avoidance of increase in sulfur in the iron is made possible, and even reduction in the sulfur content of the iron charged, in which a hot, clean iron is readily obtainable, in which improved fluxing and melting conditions are maintained, and in which the cupola operation is otherwise benefited. The invention makes possible the use of high sulfur coke, higher in sulfur than now commonly considered available for foundry practice. It also makes possible the use of high sulfur pig iron, which is refined to a greater or less extent and lowered in its sulfur content by the remelting and refining process of the present invention."

It will be observed from the foregoing that Hennig emphasizes desulphurization as an ultimate object, while with Evans other objects appear to be also in view. Evans includes, however, " * * * the avoidance of increase in sulfur * * * and even reduction in the sulfur content of the iron," and at other points in his specification makes other references to desulphurizing which indicates that this is at least one ultimate result sought by him.

The count itself when analytically examined discloses three steps: (a) Combustion of coke for the melting of iron; (b) supplying the foundry charge with a sufficient amount of sodium carbonate to form and maintain a thinly fluid alkaline slag; (c) maintaining a substantial body of such slag in contact with molten metal in the hearth of the cupola during the cupola operation.

In the decision of the Examiner of Interferences it is stated: "Sulphur compounds seriously affect the physical properties of iron castings and the percent of sulphur tolerated therein is low. In ordinary foundry practice coke, a fluxing material, and scrap iron are successively and continuously charged into the top of the furnace. The heat supplied by the combustion of the coke causes the iron to melt and collect on the hearth. The sulphur content of the scrap iron is increased by reaction of the sulphur in the coke as the iron melts and descends through the cupola. The flux combines with the ash of the coke and impurities of the iron to make a slag which forms a layer over the molten iron on the hearth. The iron as it melts consequently descends through the molten slag layer. It is desirable to utilize a flux, for which sulphur has a greater affinity than it has for iron, so that the sulphur in both the coke and iron will react therewith and enter the slag instead of reacting with or remaining with the iron. The issue contemplates the use of sodium carbonate in the flux for such purpose."

It would seem that the Examiner of Interferences interpreted the count as though it contained a limitation to desulphurization, the feature most emphasized by Hennig, and, so interpreting it, found that Evans had failed to "establish any date of complete conception, disclosure or successful reduction to practice, prior to his filing date."

The Board of Appeals says: "The examiner makes a point of the inconclusiveness of the testimony as to desulphurization but as the count contains no limitation to a particular function, the fact that the test did not show as good results as Evans had hoped to produce, reduction to .12%, is not a sufficient basis on which to hold the test was not a reduction to practice of the count, particularly as the evidence clearly shows that other objects of the invention such as the production of a slag of high fluidity with consequent avoidance of 'bridging' were accomplished."

The Board of Appeals said: "The count must be given as broad a construction as is reasonable in determining the fact of interference. Obviously it should not be given a more limited construction in considering the proofs."

In behalf of Hennig it is here argued that "the real purpose of the invention is to desulphurize the iron," and that, if Evans' proofs "do not establish that he followed the steps set forth in the count, in issue, and do not show desulphurization of the iron, then those tests do not constitute a successful reduction to practice."

It is then urged that the proofs do not so show.

It is contended by Hennig that what we have designated as the ultimate result of desulphurization is dependent, in the process at issue, upon the maintenance of a substantial body of thinly fluid alkaline slag (this thinly fluid alkaline slag being produced by the injection of a sufficient amount of sodium carbonate) in contact with the molten metal in the hearth of the cupola, and it is urged that Evans' proofs are not sufficient to show that he used, in his claimed reduction to practice in October-November, 1923, the correct quantity of sodium carbonate to produce and

maintain the required substantial body of thinly fluid alkaline slag, with a desulphurizing result.

In other words, counsel for Hennig apparently reasons back from effect to cause. Contending that the proofs of Evans do not establish desulphurization, it is argued that we must conclude from this (at least in part from this) that Evans did not, at the time admitted to be here critical, conceive, disclose, and reduce to practice the steps required by the count.

Evans insists that "whether or not such a slag will desulphurize iron is a matter of complete indifference," since the count makes no reference whatsoever to desulphurization, and that, "if, in the melting of iron, soda ash is introduced into the cupola in the amounts specified by Evans and Hennig [then], the soda ash produces a slag which comes within the meaning of the count, and the formation of such a slag is a practice of the invention regardless of whether or not in any specific instance, the iron was desulphurized."

It may be stated, however, that Evans does not concede that there is a failure of proof as to his accomplishing desulphurization. Upon the contrary, he insists that the proofs show that he did accomplish it.

It is our opinion that Evans' theory as to the construction of the count, which seems to have been the theory adopted by the Board of Appeals, is the correct one.

If the practice of the count should fail to produce desulphurization—one of the stated ultimate objects of the specification—the effect which this might have upon the validity of a patent therefor, if tested in a proper proceeding, might present an interesting question, but it is one which does not appear to us to have any proper bearing in this proceeding. The presumption, at least, is that the practice of the count will result in the functions claimed for it, and, if it be shown that Evans followed the steps indicated, we do not think it was incumbent upon him, in this proceeding, to go further and prove the result, or that it may properly be conclusively held from a mere failure specifically to show an effect not named in the count itself that there was a failure in creating the specified cause or causes of, or for, the effect.

We do not mean to hold here that Evans' proofs are insufficient to show desulphurization, in fact. We incline to the contrary view. But, whether sufficient or insufficient, we hold that, under the particular facts of this case, it is immaterial.

As to the first step of the count—melting iron in a foundry by the combustion of coke —no question as to Evans having done it is made.

As to the second step—the use of sufficient sodium carbonate to form a thinly fluid alkaline slag—Hennig does not question Evans' use in October-November, 1923, of some sodium carbonate, nor, as we understand it, that a thinly fluid slag was produced, but states, in his brief, that "there is no testimony whatever by anyone that any analysis of the slag was made to determine whether or not it was of *relatively high alkalinity*." (Italics ours.)

It seems sufficient to say upon this point that we find nothing in the count which calls for "relatively high," or any other degree of, alkalinity.

We assume that some degree of alkalinity is inherently formed and maintained by the use of sodium carbonate in connection with other elements of the operation. That is what the count calls for, and all that it embraces as to this particular step.

Hennig's most serious attack (aside from the argument as to the ultimate result, already disposed of) is leveled at Evans' proofs relative to "maintaining a substantial body of such [thinly fluid alkaline] slag in contact with molten metal in the hearth of the cupola during the cupola operation."

In considering this we are at once confronted with the query, What is meant by substantial body? Hennig, in his specification, gives us no standard, and the record contains nothing which throws any light upon that question. Judicial knowledge may be taken, we think, of the fact that, in the practice of reducing iron and iron ores by melting in foundry cupolas, a fluid slag is produced which collects on the cupola hearths. In the absence of proofs to the contrary, we can see no valid reason for holding erroneous the conclusion of the Board of Appeals to the effect that "standard practice" is not shown to have been departed from by either party. Indeed, Hennig's specification indicates quite clearly that he did follow standard practice, whatever that may mean as it relates to a "substantial body," and we fail to find in Evans' proofs the slightest indication that he did otherwise at the critical period upon which his reduction to practice depends.

No necessity demands a lengthening of this opinion by inserting a review of the testimony, nor is there any occasion for comment upon the alleged inconsistency of one of Evans' witnesses. It is not material, even if

the alleged discrepancy should be held to exist. Neither do we think the statement of the Board as to the witness Kobler not being a chemist, although there is no specific testimony to that fact, constitutes reversible error.

The decision of the Board of Appeals is affirmed.

Affirmed.